UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT GARRISON,

    Plaintiff,

v.

DOUG WADDINGTON, *et al.*,

    Defendants.

Case No. C05-5487 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:
February 22, 2008**

Before the Court is the motion for summary judgment of Defendants Douglas Waddington, Dan Van Ogle, Michael Obenland, John Cool, and Neil Bennett, seeking summary dismissal of Plaintiff's claims. (Dkt. # 38). By notice, Defendants Lynn Phipps and Thomas D. McIntyre join in the motion.[1] (Dkt. # 94). In support of their motion, Defendants submit the Declarations of Dan Van Ogle, Douglas W. Carr, and Jon Cool. (Dkt. # 38, Exhs. 1-3, with attachments). Plaintiff has not responded to Defendants' motion, although the Plaintiff was previously granted several extensions and has had ample time to respond to Defendants' motion. (*See* Dkt. # 110). Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission

---

[1] Plaintiff also named Correctional Officer Newton and John/Jane Doe Defendants, who were not served within 120 days after filing of Plaintiff's Complaint on August 2, 2005 (Dkt. # 4), pursuant to Fed.R.Civ.P. 4(m). Thus, this Court lacks personal jurisdiction over these defendants. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (citation and footnote omitted).

REPORT AND RECOMMENDATION - 1

the motion has merit.

After careful review of Defendants' motion, supporting evidence, the balance of the record, and viewing the facts in the light most favorable to the Plaintiff, the undersigned recommends that Defendants are entitled to summary dismissal of the claims against them.

## I. INTRODUCTION

Plaintiff alleges Defendants violated his First Amendment claim of denial of access to the courts by limiting his use of the law library, blocking computer access to certain legal programs, interfering with his outgoing legal mail, destroying evidence and infracting him in retaliation for participating in the legal process. Plaintiff also alleges Defendants also violated his Eighth Amendment right to be free of cruel and unusual punishment by shackling him with other prisoners in the IMU Unit and by arbitrarily denying certain foods to prisoners in his Unit, such as ice cream or real fruit juice, as a form of punishment. (Dkt. # 4, pp. 3-4). Plaintiff claims that these actions occurred during the time he was housed in the intensive management unit, Unit F, at Stafford Creek Corrections Center (SCCC), from February 27, 2002 through December 30, 2002. (*Id.*, p. 8).

Defendants in this action are all present or former officials and/or employees of SCCC. (Dkt. # 38; # 12; #25).

## II. UNDISPUTED FACTS

The following facts are not in dispute:

1. The menu items for offenders at SCCC are established by food service staff and Defendant Van Ogle is not involved in determining what IMU offenders are fed. (Dkt. # 38, Exh. 1, p. 20).

2. Plaintiff does not assert that the food served in the IMU was nutritionally inadequate. (*Id.*, Exh. 2, Deposition Transcript of Robert Garrison, p. 74, LL. 2-12).

REPORT AND RECOMMENDATION - 2

3. Under DOC policy, all offenders in the IMU must wear restraints for all movement. (*Id.*, p. 19).

4. All inmates in C-pod of the SCCC IMU, including Plaintiff, were required to wear leg restraints whenever they were moved by correctional staff because many offenders in this pod had been disruptive and had assaulted staff during movement. These extra restraints were used for a little over one month. (*Id.*, p. 19-20).

5. Plaintiff was treated the same as all other inmates in the SCCC IMU C-pod in 2002 with respect to leg restraints. (*Id.*, Exh. 2, p. 72, LL. 7-10).

6. Plaintiff does not assert that he suffered injury due to the leg restraints. (*Id.*, Exh. 2, p. 72, L. 25; p. 73, LL. 1-16).

7. Law Library hours offered to offenders assigned to SCCC IMU are: Mondays 10:00 a.m. to 2:00 p.m. and Wednesdays 6:00 p.m. to 10:00 p.m. In addition to these primary hours of law library access, access is allowed seven days a week from 10:00 p.m. to 2:00 a.m. should the list of offenders signed up be exceptionally long. (*Id.*, Exh. 1, p. 18).

8. Plaintiff was given daytime access to the law library while at SCCC. (*Id.*, Exh. 2, p. 75, LL. 11-25).

9. Plaintiff received approximately two and half-hours of access per week on the law library terminals. (*Id.*, Exh. 1, p. 18).

10. In 2002, the SCCC IMU law library consisted of the Versus Law system that is accessed by computer, which provides the inmates access to case law. (*Id.*).

11. The SCCC IMU law library computer in C-pod was down for an extended period of time, while offender Garrison was there in 2002, due to damaged wiring and broken keyboards. (*Id.*).

REPORT AND RECOMMENDATION - 3

12. In November of 2002 SCCC added sixteen books to the IMU law library. (*Id*., Exh. 1, p. 19).

13. In 2002 IMU offenders could request law library materials from the main institution law library if they needed materials that were not available in the IMU law library. (*Id*.)

14. Plaintiff's legal documents submitted to Defendant Cool for copying on July 7, 2002 were misplaced or destroyed. (*Id*.).

15. Plaintiff was provided two different letters regarding his misplaced/destroyed legal copies, stating that SCCC would support having him request the originals from the courts at SCCC's expense and staff would make copies of them when they arrived. (*Id*.).

16. Plaintiff's legal documents, referenced in paragraph 13 above, were all public documents. (*Id*., Exh. 2, p. 63, LL. 10-23; p. 64, LL. 19-23).

17. Plaintiff had no problems getting photocopies in 2002 while at SCCC except for the one instance on July 7, 2002. (*Id*., Exh. 2, p. 67, LL. 3-25).

18. Plaintiff was denied access to listen to an audiocassette in 2002 while in the IMU at SCCC because his behavior was one of threats and actions of misconduct which resulted in the receipt of infractions and sanctions of extended placements on Isolation status. (*Id*., Exh. 1, p. 20).

19. Plaintiff was able to listen to the audiocassette shortly after his transfer to the Washington Corrections Center. (*Id*., Exh. 2, p. 70, LL. 4-5).

20. Plaintiff has submitted a transcript of the audiocassette to the federal court. (*Id*., Exh. 2, p. 71. LL. 15-18).

21. Plaintiff had one active federal habeas corpus case in 2002 while at SCCC IMU. (*Id*., Exh. 2, p. 66, LL. 2-4).

22. Plaintiff had one active civil lawsuit against King County in 2002 while at SCCC IMU.

REPORT AND RECOMMENDATION - 4

That lawsuit was filed by Plaintiff in April 2002 while he was at SCCC. (*Id*., Exh. 2, p. 65, LL. 14-22).

23. The process in place for out-going legal mail in SCCC IMU is the same process used in all living units at SCCC. (*Id*., Exh. 1, p. 19).

24. Defendant Cool advised Plaintiff on July 16, 2002, that due to minimal staffing on first shift, officers could only process legal mail on the 11:30 p.m. walkthrough. (*Id*., Exh. 3, p. 80).

25. Defendant Cool infracted Plaintiff on July 16, 2002, for using his emergency call button for a non-emergent use and for covering his cell window. (*Id*.).

26. Between February 2002 and December 2002, Plaintiff only had one instance where he was unable to send out his legal mail and it was mailed out on the following day. (*Id*., Exh. 2, p. 68, LL. 12-18).

27. Plaintiff's legal document was not late getting to the court as a result of being mailed out the next day. (*Id*., Exh. 2, p. 69, LL. 1-2).

### III. STANDARD OF REVIEW

In examining Defendants' motion, the Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or

REPORT AND RECOMMENDATION - 5

defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

## IV.  DISCUSSION

**A.    Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have

REPORT AND RECOMMENDATION - 6

personally participated in the acts alleged. *Id*. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

**1.    Meaningful Access to the Courts - Counts I, II and III of Complaint**

Plaintiff had one active federal habeas corpus case in 2002 while at SCCC IMU. (Dkt. # 38, Exh. 2, p. 66, LL. 2-4). Plaintiff also had one active civil lawsuit against King County in 2002 while at SCCC IMU. (*Id*., Exh. 2, p. 65, LL. 14-22). Plaintiff filed the lawsuit against King County in April 2002 while he was at SCCC. (*Id*).

Defendants submit that Plaintiff cannot establish that his legal access was inadequate or that he suffered any injury or prejudice to his litigation as a result of the actions of the Defendants in this case. Plaintiff was not denied access to courts as Plaintiff was able to file a new lawsuit in 2002 while at SCCC and was able to litigate his federal habeas corpus action.

The touchstone of an access to courts claim is whether the access to courts program provides inmates with "meaningful access to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This is not a bright line test and an access to courts program is "evaluated as a whole to ascertain its compliance with constitutional standards." *Bounds v. Smith*, 430 U.S. 817, 832 (1997). In matters such as development of access to courts programs, courts are to defer to the expertise of prison officials. *Lewis*, 518 U.S. at 361 (prison officials are entitled deference with regard to access to courts programs). Inmates' rights of access to the courts are not unlimited, and the time, place and manner in which they are provided can be regulated. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985) (discussing access to the law library).

Before an inmate can bring a lawsuit for an access to courts violation, the inmate must have standing. In *Lewis*, the Supreme Court held that to have standing to bring an access to courts claim,

REPORT AND RECOMMENDATION - 7

an inmate must allege both that he was denied access to legal materials or advice and that this denial harmed his ability to pursue non-frivolous legal action, that is, the inmate must show actual injury. To show actual injury the inmate must, for example, show that because of the inadequate library facilities or because of the prison regulations governing access and use of the library facilities, the inmate was unable to file a complaint or that the inmate lost a case because the inmate could not timely file critical pleadings. *Id*. at 351.

Delays in providing legal services are not of a constitutional magnitude in and of themselves. Even when such delays result in actual injury, if the delay is the result of legitimate penological interests, there is no constitutional violation. *Id.* Even the inability to file a particular pleading is insufficient to establish a violation of access to the courts. *Lewis v. Casey, supra*.

Plaintiff's access to court claims may be generally divided into three categories: (1) denial of access to the law library and legal resources, (2) destruction of legal documents; and (3) denial of access to cassette.   Plaintiff's allegations and the summary judgment evidence is viewed for each of these categories in turn below.

        **a.**     **Access to Law Library/Legal Resources**

Plaintiff alleges that he was only allowed law library access from 10:00 p.m. to 4:00 a.m. five days a week. (Dkt. # 4, p. 8).   Plaintiff also alleges that the IMU law library did not have adequate resources, which limited his access to courts.  (*Id*., pp. 8-10).

The undisputed evidence before the Court reflects that the SCCC IMU Law Library is available to offenders on Mondays from 10:00 a.m. to 2:00 p.m. and on Wednesdays 6:00 p.m. to 10:00 p.m.  (Dkt. # 38, Exh. 1, Attach. B, p. 45).  In addition, Plaintiff admitted that he was given daytime access to the law library several times while at SCCC in 2002.  (*Id*., Exh. 2, p. 75, LL. 11-25).  Plaintiff received approximately two and half hours of law library access per week even

REPORT AND RECOMMENDATION - 8

though the SCCC IMU law library computer in C-pod was down for an extended period of time in 2002 due to offender caused damage. (*Id*., Exh. 1, p. 18).

The evidence also reflects that part of the time Plaintiff was in the C-pod, the IMU law library only consisted of the Versus Law system which provides access to case law. (Dkt. # 38, Exh. 1, p. 18). However, in November 2002 SCCC added sixteen books to the IMU law library which offenders could check-out. (*Id*., Exh. 1, p. 19). Additionally, IMU offenders were also able to request law library materials from the main institution library if they needed something that was not available in the IMU law library. *Id*.

### b. Destruction of Legal Documents

Plaintiff alleges that he was denied access to courts due to the destruction of 102 pages of exhibits which he provided to Defendant Cool for copying. (*Id*., pp. 16-18). Plaintiff claims that these exhibits were to be used in a state or federal pleading for a claim of actual innocence. (*Id*., p. 16).

It is undisputed that Plaintiff's legal documents were inadvertently misplaced or destroyed by unidentified staff and never located. (*Id*., Exh. 1, p. 19). Defendant Van Ogle's investigation determined that Plaintiff failed to follow established procedure when he requested the legal copies. *Id*. However, Defendant Van Ogle told Plaintiff that SCCC would support having him request the originals from the courts at Defendants' expense and SCCC staff would make copies of them when they arrived. (*Id.*, Exh. 1, p. 19; Exh. 1, Attach. D, p. 55; Attach. E, p. 57). Plaintiff testified in his deposition that the statements regarding SCCC paying for the documents to be replaced were "rather ambiguous" to him. (*Id*., Exh. 2, p. 76, LL. 20-25; p. 77, LL. 1-4). Plaintiff also admitted that all of the lost or destroyed documents were public documents. (Exh. 2, p. 63, LL. 10-23; p. 64, LL. 19-23). Plaintiff testified in his deposition that he had no problems getting photocopies the

REPORT AND RECOMMENDATION - 9

entire time he was at SCCC except for the one instance on July 7, 2002, when his legal papers/exhibits were lost or destroyed. (*Id*., Exh. 2, p. 67, LL. 3-25).

### c.     Denial of Access to Cassette Tape

Plaintiff alleges that Defendant Van Ogle denied Plaintiff access to listen to a legal cassette tape while his was in IMU in 2002, which limited his ability to make a verbatim [transcript] of the tape so that he could raise a claim of actual innocence. (*Id*., pp. 11-13).

The undisputed evidence reflects that Defendant Van Ogle's denial of Plaintiff's requests to listen to an audiocassette was the result of Plaintiff's behavior and misconduct, which resulted in Plaintiff receiving infractions and sanctions of extended placements on Isolation status. (Dkt. # 38, Exh. 1, p. 20). At the time, it was determined that Plaintiff's actions did not warrant placing facility safety in jeopardy by allowing him movement outside his cell and allowing him possession of a state owned audio cassette player. *Id*. In addition, Plaintiff was able to listen to the audiocassette while he was at the Washington Corrections Center. (*Id*., Exh. 2, p. 82, LL. 4-5). Plaintiff submitted a transcript of the audiocassette to the federal court. (*Id*., Exh. 2, p. 83, LL. 15-18).

Viewing the summary judgment evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff was provided constitutionally adequate access to legal resources. In addition, the record reflects that the loss of Plaintiff's exhibits was at most, negligent. The exhibits are public records and Defendants offered to assist Plaintiff in obtaining replacement copies. In any event, an action for negligence is not cognizable under 42 U.S.C. § 1983. *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668 (1986); *Daniels v. Williams*, 474 U.S. 327, 333, 106 S. Ct. 662, 666 (1986); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

Plaintiff cannot establish that his legal access was inadequate or that he suffered any injury or prejudice as a result of Defendants' conduct. Plaintiff had one active federal habeas corpus case

REPORT AND RECOMMENDATION - 10

in 2002 while at SCCC IMU.  (Dkt. # 38, , Exh. 2, p. 66, LL. 2-4).  Plaintiff also had one active civil lawsuit against King County in 2002 while at SCCC IMU. (*Id*., Exh. 2, p. 65, LL. 14-22). Plaintiff filed the lawsuit against King County in April 2002 while he was at SCCC. (*Id*.).  Plaintiff was not denied access to courts as Plaintiff was able to file a new lawsuit in 2002 while at SCCC and was able to litigate his federal habeas corpus action.[2]

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's access to courts claim be granted.

### 2. Plaintiff's Eighth Amendment Claim - Count IV

Plaintiff alleges that he and all C Pod inmates of the IMU Unit were shackled together for any and all movements in violation of DOC policy.  (Dkt. # 4, p. 21).  Plaintiff also claims that the inmates in this Unit were not allowed to receive ice cream and real fruit juice with their meals, unlike other prisoners within the prison, and that these items were withheld as a form of punishment.  (*Id*., p. 22).  Plaintiff alleges that the overall treatment of Plaintiff while at SCCC's IMU Unit from February 27, 2002 through December 27, 2002 amounted to cruel and unusual punishment.  (*Id*., p. 23).

The Eighth Amendment protects prisoners from cruel and unusual punishment.  It is well established that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Liability under the Eighth Amendment is imposed only if the inmate can establish that he was subjected to "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."

---

[2]*Garrison v. City of Seattle*, Case No. C01-224RSL, was dismissed without prejudice on May 2, 2002 pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Dkt. # 41, 42).  Plaintiff's petition for writ of habeas corpus in *Garrison v. Waddington*, Case No. C02-579RSM, was dismissed without prejudice for failure to exhaust administrative remedies on May 16, 2003.  (Dkt. # 66).

REPORT AND RECOMMENDATION - 11

*Helling v. McKinney*, 509 U.S. 25, 32 (1993).

A prison official violates the Eighth Amendment only when two requirements are met: (1) the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825 (1994). The Eighth Amendment standard requires proof of both an objective and a subjective component. First, the deprivation alleged by the inmate must be, objectively, "sufficiently serious". *Farmer,* 511 U.S. at 834. Second, the prison officials must know of and must deliberately disregard the risk of harm to the inmate. *Id*. at 842. If one of the components is not established, the court need not inquire as to the existence of the other. *Helling*, 509 U.S. at 35. In proving the objective component of the Eighth Amendment standard, an inmate must establish that there was both some degree of actual or potential injury, and that "society considers the [acts] that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly" to those acts. *Helling*, 509 U.S. at 36; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

A prison condition only constitutes "unnecessary and wanton infliction of pain" when the condition violates "evolving standards of decency" or is "so totally without penological justification that it results in gratuitous infliction of suffering." *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982) (citations omitted).

Plaintiff testified in his deposition that IMU inmates received fruit cocktail instead of ice cream and artificially-flavored beverages instead of real fruit juice. (Dkt. # 38, Exh. 2, p. 74, LL. 8-12). In addition, Plaintiff does not claim that the food served in IMU is nutritionally inadequate. (*Id*., Exh. 2, p. 74, LL. 2-6). The menu items for offenders are established by food service staff and Defendant Van Ogle is not involved in determining what IMU offenders are fed. (*Id*., Exh. 1, p. 20).

REPORT AND RECOMMENDATION - 12

The undisputed evidence also reflects that DOC Policy 420.250 authorizes use of restraints for all movement in IMU. (*Id*., Exh. 1, p. 19; Exh. 1, Attach. B, p. 43. Defendant Van Ogle made the order for leg restraints in addition to wrist restraints due to negative assaultive behavior of many of the offenders in C-pod in order to ensure safety and prevent assaultive behavior. (*Id*., Exh. 1, p. 20). Plaintiff does not assert that he suffered injury due to the leg restraints. (*Id*., Exh. 2, p. 72, L. 25; p. 73, LL. 1-16).

Viewing the undisputed evidence in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff was not subjected to unnecessary and wanton infliction of pain contrary to contemporary standards of decency. The record reflects that under the factual circumstances shown, the additional restraints for IMU offenders was reasonable and did not violate Plaintiff's Eighth Amendment rights. There is also no evidence that Plaintiff was denied food as a form of punishment. To the contrary, the evidence reflects that the food served in the IMU is nutritionally adequate and that Defendant Van Ogle is not involved in determining what IMU offenders are fed.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim regarding the conditions of his confinement be granted.

### 3. Plaintiff's Claim of Retaliation

In the Ninth Circuit, retaliation claims consist of four elements; (1) a state actor took some adverse action against an inmate, (2) because of the prisoner's protected conduct, (3) such action chilled the inmate's exercise of First Amendment rights, and (4) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).[3]

Plaintiff alleges that Defendant Cool failed to process his outgoing legal mail and infracted

---

[3]The Court in *Rhodes* indicated that prisoner retaliation claims have five (5) elements, however, elements 2 and 3 appear to be so integrally related as to be one element**.**

REPORT AND RECOMMENDATION - 13

him for pushing his call button and for blocking his cell door. (Dkt. # 4, pp. 19-20).  Plaintiff alleges that these infractions were, "in reality retaliation for his complaining about law library, legal access, destruction of his legal exhibits, and how Van Ogle was unjustly running his unit."  *Id*. at p. 20.   Plaintiff also alleges that Defendant Van Ogle knew or should have known that not having a designated officer and time schedule for handling IMU prisoners' outbound legal mail would result in refusals to process legal mail as it required extra work.  *Id*.

The summary judgment evidence reflects, however, that the process for outgoing legal mail in SCCC IMU is the same process used in all living units at SCCC. (Dkt. # 38, Exh. 1, p. 19). Plaintiff was infracted on July 16, 2002, for using his emergency call button for a non-emergent use and for covering his cell window.  (*Id.*, Exh. 3, p. 80). The July 16, 2002 date was the only time while Plaintiff was at SCCC that Plaintiff was unable to send out his legal mail and that mail was sent out on the following day.  (*Id*., Exh. 2, p. 68, LL. 12-18).  Plaintiff's legal document was not late in getting to the court due to it being mailed out the next day.  (*Id*., Exh. 2, p. 69, LL. 1-2).

Viewing the facts in the light most favorable to Plaintiff, the undersigned finds that the record does not support a claim of retaliation against Defendants.  As noted above, the record does not support a finding that Defendants violated Plaintiff's constitutional right to access the courts. The record reflects that there was no "chilling" of Plaintiff's exercise of his First Amendment rights, and that the actions taken by Defendants advanced legitimate correctional goals. (Dkt. # 38, Exh. 1, p. 20; Exh. 3, p. 2).    Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's retaliation claim be granted.

**B.    Qualified Immunity**

Defendants argue that they are, in any event, entitled to qualified immunity.  As the Court has determined that Plaintiff has not demonstrated a violation of his constitutional rights, this issue

REPORT AND RECOMMENDATION - 14

need not be reached.  *See e.q., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

## V.  CONCLUSION

For the reasons stated above the Court should **GRANT** the motion for summary judgment of Defendants (Dkt. # 38).  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **February 22, 2009**, as noted in the caption.

DATED this  28th   day of January, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15